STATE OF NEBRASKA, EX REL. EMILY J. COOLEY, EXECUTRIX, v. EMAN J. SPIRK, TREASURER.

FILED MARCH 3, 1896.    No. 7403.

School-Land Contracts: FORFEITURE: NOTICE: REVIEW. There is, in this error proceeding, involved only a question of fact determined by the district court upon conflicting evidence. Its judgment is therefore affirmed.

ERROR from the district court of Saline county. Tried below before HASTINGS, J.

*Joshua Palmer* and *Abbott & Abbott,* for plaintiff in error.

*A. S. Churchill, Attorney General, George A. Day, Deputy Attorney General,* and *J. H. Grimm, contra.*

RYAN, C.

Emily J. Cooley, as relator, applied in the district court of Saline county for a *mandamus* requiring the county treasurer of said county to accept the money she had tendered him, and apply the same to the payment of delinquent interest, and receipt for the same according to law. The relator was the wife of Rufus Cooley, who died March 18, 1894, and she became his executrix June 15, immediately thereafter. On July 18,

26

1883, said Rufus Cooley purchased of the state
of Nebraska the northwest quarter of the south-
east quarter of section 16, in township 8,
range 2 east, 6th principal meridian. This
land was about three miles distant from the
town of Friend and was situate in Saline
county. The purchase price of the land was
$277.50, due July 18, 1893. On this sum, mean-
time, he was required to pay on the 1st day
of January of each year $14.98. These install-
ments of interest he had paid for the years 1885,
1886, and 1887, but, as alleged in the petition,
through mistake or inadvertency he failed to make
any further payment. In 1889 Mr. Cooley took a
government homestead in Cheyenne county and
remained there until some time in 1890. On
March 12, 1890, the contract of Mr. Cooley was
declared forfeited by proper state authority, and
the only question presented by the record in this
case is whether or not this forfeiture was without
proper notice to Mr. Cooley. It is not clear just
where Mr. Cooley was living when this forfeiture
was declared, but we infer from all the evidence
submitted on this question that he was in Chey-
enne county. His wife and children, according to
the testimony of Mrs. Cooley, had their home in
Lincoln, Nebraska, during the years 1889 and
1890, but she further said that her children were
attending the state university, and that she and
her children vibrated back and forth between Lin-
coln and Cheyenne county. She further testified
that her husband's business address during 1889
and 1890 was in Lincoln. There were introduced
in evidence a tax receipt and a redemption certifi-
cate issued by the treasurer of Saline county, both
of which Mrs. Cooley testified had been sent to her

at Lincoln by the aforesaid treasurer. These were of date March 4, 1890. There was also introduced a letter from J. P. Clary, county treasurer of said county of Saline, addressed to R. Cooley at Lincoln, but as this was dated December 15, 1887, it had but little bearing upon the important fact in this case of the knowledge possessed by another county treasurer of the whereabouts of Rufus Cooley in 1889 and in the fore part of 1890. Mr. Sadilek, who was treasurer of Saline county in 1889 and 1890, and Mr. Spirk, who was during said time his deputy, each testified that he had no knowledge during that time of Mr. Cooley, and that, not being informed as to his place of residence, one of them sent a registered letter addressed to Mr. Cooley at Friend, the post-office nearest the land described in the school-land contract, in which letter was enclosed due and timely notice of the proposed forfeiture of Cooley's said contract. This registered letter was returned uncalled for, and thereafter, as shown by proof of publication thereof, there was notice published in the Wilber *Republican*, a weekly newspaper published in said county, for three consecutive weeks, being on September 5, 12, and 19, 1889, that within ninety days from the date of said notice, August. 9, 1889, said school-land contract would be forfeited. This forfeiture, in fact, as already stated, was declared on March 12, 1890. In the same newspaper there was published a notice that if the amount due were not meantime paid up, the commissioner of public lands and buildings of the state would, on and after April 19, 1890, at the office of the county treasurer of Saline county, offer for lease the land described in the aforesaid school-land contract. No payment having been

made, there was made by the proper state authori-
ties another lease of this land on February 11,
1892, to John Jahn, Jr.    The district court found
adversely to the relator's contention, and from a
judgment to that effect she prosecutes error pro-
ceedings to this court.

Upon the question whether or not the county
treasurer knew of the place of residence or address
of Mr. Cooley in 1889 or 1890 there was such an
amount of merely conflicting evidence that we
cannot ignore the conclusion of the court in re-
spect thereto.    There seems to be no attempt by
the plaintiff in error to controvert the proposition
that if this fact must-be taken as established, then
service by publication was proper, and that, under
the rules laid down in *State v. Clark*, 39 Neb., 899,
the conclusions of the trial court must be sus-
tained.    We think counsel are correct in this as-
sumption, and the judgment of the district court is

AFFIRMED.